Haight, J.
This action was brought to compel the defendant to surrender and deliver up to the plaintiff seventy-four shares of the capital stock of the Pfaudler Process Fermentation Company of the city of Rochester, which stands in the name of the plaintiff on the books of the company, and to assign and transfer to him seventy-five shares of the stock of the company, and to accomit for and pay over to him one-fourth of all the royalties, license fees, moneys and other valuable things received, or agreed to be received, by the defendant' under and pursuant to a contract with the company.
On the 20th day of November, 1882, the defendant entered into a contract with the Pfaudler Process Fermentation Company of the city of Rochester, in and by the terms of which the defendant purchased of the company three hundred shares'of its capital stock for the sum of $5,000, the defendant agreeing that he would at his own cost and expense keep open the company’s office, hire sufficient help for the proper transaction of its business, to establish agencies throughout the country, and through its agents and servants to usa his best efforts in soliciting orders and licensing apparatuses covered by letters patent issued by the United States, to brewers and others; to make up and *478 put in at his own cost and expense in breweries and wine cellars all apparatuses that he could license to brewers and others in one year from the date thereof, and to give his individual guarantee any time during the year ending November 30th, 1883, when required by the company, for a term of one year from the date thereof, to all brewers and wine manufacturers to whom a license is granted to use its apparatus ; the guarantee to be annexed to or endorsed upon the license conditioned to indemnify and save harmless the users thereof for a term of one year from the date thereof against all costs and expenses they or either of them may incur or have to pay growing out of any suits or litigations which may be brought against them for using the apparatuses during the year, with a provision therein contained to the effect that the user or licensee of the apparatus, or the defendant, has the right to cancel or terminate the guarantee anytime during the year at the election of either party by giving thirty days notice in writing of their election so to do. Thereafter, and on the 27th day of December, 1882, the defendant entered into a contract with the plaintiff and one Charles C. Puffer, in and by the terms of which he agreed to sell to the plaintiff seventy-five shares of the capital stock of the company so purchased by him by the contract of November, 1882, for the sum of $1,250 to be paid by the giving of a promissory note for that amount payable on or before November 21st, 1883, with interest secured by 69 1-4 shares of the capital stock of the company, which the plaintiff agreed to leave in the hands of the defendant until plaintiff’s note was paid, and until the defendant was discharged from all of his contract as guarantor to users and licensees of the apparatus, which he shall assume by virtue of his contract with the company, dated November 20th, 1882, the defendant agreeing that upon the payment to him of principal and interest of the note, and of his being released and discharged from all further liability on his aforesaid guarantees; or sooner, becoming satisfied that all danger of loss from liability therein no longer exists, he will surrender to the plaintiff his note, and securities, and transfer and assign to him seventy-five shares of the stock of the company, and pay over to him one-fourth of all the royalties which have accrued, or which may accrue, to him under his said contract with the Pfaudler Process Fermentation Company. That pursuant to said contract the plaintiff delivered to the defendant his note for $1,250, together with seventy-four shares of the capital stock of the company as collateral security, and at or before the maturity of the note he paid the same in full. Subsequently to the making of the last contract, and on the 4th day of May, 1883, the defendant, without the knowl *479 edge or consent of the plaintiff, entered into a further contract with the company, in, and by which it was mutually agreed, that the contract of November 20th, 1882, was terminated and cancelled, the company agreeing to pay him the sum of $5,000, and such further sum as he had advanced in the purchase of the apparatus which was fixed at $1,252.12, and to pay him therefor by giving the company’s note for the sum of $6,252.12, with interest, payable on demand out of the first receipts of the company in excess of the sum required for necessary expenses.
Thereafter, and during the months of August and October, 1883, the company issued licenses to use its apparatus to four different parties, agreeing to protect them and save them harmless from all legal costs and damages growing out of any suit or suits which may be brought against them out of their letters patent, and the defendant individually guaranteed the performance of the company in this regard.
It is now contended, on the part of the defendant, that under the contract with the plaintiff, he is not required to surrender up the seventy-four shares of stock held by him as collateral security, or to transfer and assign to the plaintiff the seventy-five shares of stock sold to the plaintiff until he is released from liability upon the guarantees given by him to the parties to whom licenses to use the apparatus have been issued.
The trial court held and decided that the defendant has not at any time become liable as guarantor to the user or licensees of the company in pursuance of the terms of the contract of November 20, 1882, and this finding would seem to be sustained by the evidence, for it appears that prior to the issuing of any licenses, or the making of any guarantee, the contract of November 20 was cancelled and annulled; and the guarantee subsequently given by the defendant was not in accordance with the guarantee provided for by that contract. But the contract of May 4, as we have seen, by which the contract of November 20 was cancelled, was without the knowledge or consent of the plaintiff. He was not a party to the contract, and consequently claims the right to now recover one-fourth of the royalties collected and to be collected under the licenses issued by the company; and if so, may be bound by the guarantee given by the defendant for the term of one year from the date thereof, in accordance with the provisions of the contract of November 20. The appeal book does not contain a statement of the time when the action was commenced, as is required by the rule, but the summons bears date November 15, 1884, and it would consequently appear that the action was commenced more than one year after the licenses were issued, and no claim for damages had been *480 presented at that time, making the defendant hable upon any of his guarantees. But the statute of limitations had not run, and it is said that claims may be presented. Of-course this is possible. We are, however, of the opinion that the plaintiff is no longer bound by such guarantees under another theory. The guarantees made do not conform to the contract of November 20. Neither the licenses or the guarantees are limited in time. They may, consequently, run during the entire lifetime of the patent; whereas, under the contract of November 20, the guarantee was to be for the term of one year only, with the right to sooner terminate it on giving thirty days notice. Under the contract of November 20, the company was primarily liable to protect and save harmless the parties licensed to use the apparatus;, and the defendant by his guarantee, so far as the company was concerned, occupied the relation of surety; and the plaintiff and Puffer, by virtue of their contract with the defendant of December 27, became sureties to him. The defendant by his contract with the company under date of May 4, as we have seen, without the knowledge and consent of the plaintiff, terminated and cancelled his contract with the company, thereby releasing the company from its primary liability. By so doing, he consequently, under a familiar and well settled principle, released the plaintiff as his surety.
Upon the trial the defendant sought to prove that he had received no royalties and that the $5,000, mentioned in contract of May fourth, had not been paid. This evidence was excluded by the court and exception taken. The court in the trial of the case had the right to reserve matters that would necessarily be involved in the accounting and in as much as these matters will of necessity be inquired into on the accounting ordered herein, the exclusion of the evidence did the defendant no haim. It may be that the defendant at that time had received no royalties and yet under the contract and licenses issued he may have been entitled to collect and receive royalties which had not then accrued.
The judgment-roll in another action between the parties was admitted in evidence. It is now contended that its admission was improper for the reason that it had not been pleaded. The roll is not set out in the case and its materiality does not appear. It is not claimed to constitute any bar; and as evidence it maybe used without being plead. Krekeler v. Ritter, 62 N Y., 372.
It is claimed that the contract of December twenty-seventh does not entitle the plaintiff to any part of the $5,000, which it was agreed to pay the plaintiff by the contract of May fourth, but the interlocutory judgment entered does *481 not so adjudge. Whether or not the plaintiff is entitled to share in this item will doubtless be considered upon the accounting and the question is not now properly before this court.
No other exceptions appear in the case which we consider it necessary to discuss. The interlocutory judgment, should be affirmed and the motion for a new trial denied with costs.
Smith, P. J., Barker and Bradley, JJ., concur.